JULIE A. DUNNE (Bar No. CA-160544)
julie.dunne@us.dlapiper.com
MATTHEW RILEY (Bar No. CA-257643)
matthew.riley@us.dlapiper.com
ALBERTO CORONA (Bar No. CA-339906)
alberto.corona@us.dlapiper.com
**DLA PIPER LLP (US)**
401 B Street, Suite 1700
San Diego, CA 92101
Tel:   619.699.2700
Fax:   619.699.2701

Attorneys for Defendant
TARGET CORPORATION

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZACHARY LOMELY, an individual, on behalf of himself and on behalf of all persons similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TARGET CORPORATION, a Corporation; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No.  1:22-at-00941<br><br>(Kern County Superior Court Case No. BCV-22-102580)<br><br>**DEFENDANT TARGET CORPORATION'S NOTICE OF REMOVAL TO FEDERAL COURT PURSUANT TO 28 U.S.C. §§ 1332, 1441, AND 1446**<br><br>Complaint Filed:  September 30, 2022 |

**TO THE CLERK OF THE ABOVE-ENTITLED COURT, PLAINTIFF ZACHARY LOMELY, AND PLAINTIFF'S ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that Defendant Target Corporation ("Defendant") hereby removes the state court action described herein, filed by Plaintiff Zachary Lomely ("Plaintiff") in the Superior Court of the State of California, County of Kern, to the United States District Court for the Eastern District of California, pursuant to 28 U.S.C. §§ 1332(d), 1441, and 1446. Defendant makes the following allegations in support of its Notice of Removal:

## I.  STATEMENT OF JURISDICTION

1. This Court has original jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), which vests the United States district courts with original jurisdiction of any civil action: (a) that is a class action with a putative class of more than 100 members; (b) in which any member of a class of plaintiffs is a citizen of a state different from any defendant; and (c) in which the matter in controversy exceeds $5,000,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332(d). CAFA authorizes removal of such actions in accordance with 28 U.S.C. § 1446. As set forth below, this case meets all of CAFA's requirements for removal and is timely and properly removed by the filing of this Notice of Removal.

## II.  VENUE

2. Plaintiff originally brought this action in the Superior Court of the State of California, County of Kern. Therefore, venue lies in the Eastern District of California pursuant to 28 U.S.C. §§ 84(b), 1441(a), and 1446(a).

## III.  PLEADINGS, PROCESS, AND ORDERS

3. On September 30, 2022, Plaintiff filed an unverified Complaint against Defendant and unnamed Doe defendants in the Kern County Superior Court entitled *Zachary Lomely, an individual, on behalf of himself and on behalf of all persons similarly situated, Plaintiff, v. Target Corporation, a Corporation; and DOES 1 through 50, inclusive, Defendants*, designated as Case No. BCV-22-102580 (hereinafter, the "Complaint"). Plaintiff's Complaint contains nine causes of action alleging: (a) unfair competition in violation of California Business & Professions Code

1
DEFENDANT TARGET CORPORATION'S NOTICE OF REMOVAL

WEST\300875838.1

1  § 17200, *et seq.*; (b) failure to pay minimum wages in violation of California Labor Code §§ 1194,
2  1197, and 1197.1; (c) failure to pay overtime wages in violation of California Labor Code § 510;
3  (d) failure to provide meal periods in violation of California Labor Code §§ 226.7 and 512 and the
4  applicable California Industrial Welfare Commission ("IWC") Wage Order; (e) failure to authorize
5  and permit rest periods in violation of California Labor Code § 226.7 and 512 and the applicable
6  IWC Wage Order; (f) failure to provide accurate itemized wage statements in violation of California
7  Labor Code § 226; (g) failure to reimburse business expenses in violation of California Labor Code
8  § 2802; (h) failure to timely pay wages owed upon separation from employment in violation of
9  California Labor Code §§ 201-203; and (i) failure to pay sick pay wages in violation of California
10 Labor Code §§ 201-204, 233, and 246. (*See* Declaration of Matthew Riley in Support of Defendant
11 Target Corporation's Notice of Removal to Federal Court ["Riley Decl."], ¶ 2.)

12     4.    On October 6, 2022, the Clerk of the Kern County Superior Court issued a Summons
13 in the *Lomely* action. (*See* Riley Decl., ¶ 3.)

14     5.    On October 7, 2022, the Superior Court issued a Notice of Assignment to Judge for
15 All Purposes and Notice of Order to Show Cause Re CRC Rule 3.110 and Notice of Case
16 Management Conference, which Plaintiff served on Defendant on November 2, 2022. Attached
17 hereto as **Exhibit A** is a true and correct copy of the Notice of Assignment to Judge for All Purposes
18 and Notice of Order to Show Cause Re CRC Rule 3.110 and Notice of Case Management
19 Conference. (Riley Decl., ¶ 4.)

20     6.    On October 12, 2022, Plaintiff mailed the following documents to Defendant's
21 counsel: (a) Plaintiff's Complaint; (b) the Summons; (c) a Civil Case Cover Sheet; (d) an Alternative
22 Dispute Resolution (ADR) Information Packet; and (e) Notice and Acknowledgment of Receipt—
23 Civil with a pre-paid return envelope. Attached hereto as **Exhibit B** is a true and correct copy of the
24 Complaint filed in the Kern County Superior Court and mailed by Plaintiff to Defendant's counsel.
25 Attached hereto as **Exhibit C** are true and correct copies of the Summons, the Civil Case Cover
26 Sheet, the Alternative Dispute Resolution (ADR) Information Packet, the Notice and
27 Acknowledgment of Receipt—Civil and pre-paid return envelope. (Riley Decl., ¶ 5.)

28

7. On November 1, 2022, Defendant's counsel executed and served Plaintiff's counsel with the executed Acknowledgment of Receipt. Attached hereto as **Exhibit D** is a true and correct copy of the executed Acknowledgment of Receipt. (Riley Decl., ¶ 6.)

8. On November 30, 2022, Defendant filed an Answer in the Kern County Superior Court, and Defendant served a copy of that Answer on Plaintiff's counsel of record. Attached hereto as **Exhibit E** is a true and correct copy of Defendant's Answer. (Riley Decl., ¶ 7.)

9. On November 30, 2022, Defendant filed a Notice of Related Cases in the Kern County Superior Court, and Defendant served a copy of that Notice of Related Cases on Plaintiff's counsel of record. Attached hereto as **Exhibit F** is a true and correct copy of Defendant's Notice of Related Cases. (Riley Decl., ¶ 8.)

10. To Defendant's knowledge, no further process, pleadings, or orders related to this case have been filed in the Kern County Superior Court or served by any party other than as described above. To Defendant's knowledge, no proceedings related hereto have been heard in the Kern County Superior Court. (Riley Decl., ¶ 9.)

**IV.    TIMELINESS OF REMOVAL**

11. An action may be removed from state court by filing a notice of removal – together with a copy of all process, pleadings, and orders served on the defendant – within thirty days of defendant receiving service of the initial pleading. *See* 28 U.S.C. § 1446(b); *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999) (the thirty-day removal period runs from the service of the summons and complaint). Formal service of process, measured from the service date according to state law, is a prerequisite for triggering the 30-day removal period because it "assures defendants adequate time to decide whether to remove an action to federal court." *See id.* at 354. "An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Id.* at 347.

12. Under California law, a plaintiff may serve process on a defendant by mail where the mailing includes a copy of the summons and complaint together with two copies of a notice and acknowledgment form approved by the Judicial Council of California and a pre-paid return envelope

3
DEFENDANT TARGET CORPORATION'S NOTICE OF REMOVAL

addressed to sender. *See* Cal. Code. Civ. Proc. § 415.30(a). "The party being served has twenty days from the date of mailing to return the notice and acknowledgment of receipt to the sender." *Harper v. Little Caesar Enterprises, Inc.*, 2018 WL 5984841, at *2 (C.D. Cal. Nov. 14, 2018) (citing Cal. Code Civ. Proc. § 415.30(d). Service is complete under this section on the date the defendant executed the acknowledgment of receipt. *Id.*

13. Removal of this action is timely because Defendant's counsel executed and returned the acknowledgment and receipt form on November 1, 2022 – 20 days after Plaintiff mailed the Summons, Complaint, and Notice of Acknowledgment of Receipt on October 12, 2022. (Riley Decl., ¶¶ 5-6.) Because Defendant's counsel executed the acknowledgment of receipt form on November 1, 2022, formal service of the Summons and Complaint occurred that day, thus triggering Defendant's 30-day period to remove this action to federal court. *See* 28 U.S.C. § 1446(b); *Harper*, 2018 WL 5984841, at *2. Defendant thus timely removed this action on November 30, 2022 – 29 days after service.

### V. CAFA JURISDICTION

14. As noted above, this Court has original jurisdiction over this action pursuant to CAFA, which vests the United States district courts with original jurisdiction of any civil action: (a) that is a class action with a putative class of more than 100 members; (b) in which any member of a class of plaintiffs is a citizen of a state different from any defendant; and (c) in which the matter in controversy exceeds $5,000,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332(d). The removal statute requires a defendant seeking to remove a case to federal court to file a notice "containing a short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a). As set forth below, this case meets each CAFA requirement for removal.

**A.     This is a Class Action.**

15. Plaintiff filed this action as a class action. (Complaint, ¶¶ 4-5.)

**B.     The Proposed Class Contains At Least 100 Members.**

16. The provisions of CAFA apply to proposed class actions involving 100 individuals or more. 28 U.S.C. § 1332(d)(5)(B).

17. Plaintiff seeks to represent a class consisting of "all individuals who are or previously were employed by DEFENDANT in a California distribution center, including any employees staffed with DEFENDANT by a third party in a California distribution center, and classified as non-exempt employees (the 'CALIFORNIA CLASS') at any time during the period beginning four (4) years prior to the filing of this Complaint and ending on the date as determined by the Court . . . ." (Complaint, ¶ 4.) Plaintiff further seeks to represent a "California sub-class, defined as all individuals who are or previously were employed by DEFENDANT in a California distribution center, including any employees staffed with DEFENDANT by a third party in a California distribution center, and classified as non-exempt employees (the 'CALIFORNIA LABOR SUB-CLASS') at any time during the period three (3) years prior to the filing of the complaint and ending on the date as determined by the Court . . . ." (Complaint, ¶ 37.) Defendant has employed more than 100 non-exempt employees at its distribution centers in California during the four years prior to Plaintiff's filing of his Complaint. Thus, CAFA's requirement that the putative class consist of 100 or more individuals is satisfied.

### C. Defendant Is Not A Governmental Entity.

18. CAFA does not apply to class actions where "primary defendants are States, State officials, or other governmental entities against whom the district court may be foreclosed from ordering relief." 28 U.S.C. § 1332(d)(5)(B).

19. Defendant is a corporation, not a state, state official, or other government entity exempt from CAFA.

### D. There Is Diversity Between At Least One Putative Class Member And One Defendant.

20. CAFA's minimal diversity requirement is satisfied, *inter alia*, when "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. §§ 1332(d)(2)(A). In a class action, only the citizenship of the named parties is considered for diversity purposes and not the citizenship of the unnamed putative class members. *See Snyder v. Harris*, 394 U.S. 332, 339-40 (1969). Additionally, for removal purposes, diversity must exist both at the time the action was

commenced in state court and at the time of removal. *See Strotek Corp. v. Air Transp. Ass'n of Am.*, 300 F.3d 1129, 1131 (9th Cir. 2002). Minimal diversity of citizenship exists here because Plaintiff and Defendant are citizens of different states.

21.     For diversity purposes, a person is a "citizen" of the state in which he or she is domiciled. *See Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) (confirming that person's domicile is the place she resides with the intention to remain). Furthermore, allegations of residency in a state court complaint can create a rebuttable presumption of domicile supporting diversity of citizenship. *Lew v. Moss*, 797 F.2d 747, 751 (9th Cir. 1986); *see also State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 519-20 (10th Cir. 1994) (allegation by party in state court complaint of residency "created a presumption of continuing residence in [state] and put the burden of coming forward with contrary evidence on the party seeking to prove otherwise").

22.     Here, upon information and belief, at the time Plaintiff commenced this action and at the time of removal, Plaintiff resided in the State of California. (*See* Complaint, ¶ 3 ["PLAINTIFF was employed by DEFENDANT in DEFENDANT's Shafter, California distribution center, located at 3880 Zachary Avenue, from February of 2018 to July of 2022. . . ."].)

23.     Defendant is now, and was at the time the Complaint was filed, a citizen of a state other than the State of California within the meaning of 28 U.S.C. § 1332(c)(1) because Defendant is now, and was at the time the Complaint was filed, a corporation organized under the laws of the State of Minnesota with its principal place of business in the State of Minnesota. *See Hertz Corp. v. Friend*, 559 U.S. 77, 80-81 (2010) (adopting the "nerve center test," which locates a corporation's principal place of business in the place "where the corporation's high level officers direct, control, and coordinate the corporation's activities," which is "typically" the corporation's headquarters). The majority of Defendant's executive and administrative functions are performed, and the majority of Defendant's executive and administrative officers are located, in the State of Minnesota. Accordingly, Defendant is, and at all relevant times has been, a citizen of the State of Minnesota. 28 U.S.C. § 1332(c)(1).

24.     The presence of Doe defendants in this case has no bearing on diversity with respect

1  to removal. *See* 28 U.S.C. § 1441(a) ("For purposes of removal under this chapter, the citizenship

2  of defendants sued under fictitious names shall be disregarded."); *Newcombe v. Adolf Coors Co.*,

3  157 F.3d 686, 690-91 (9th Cir. 1998).

4        25.      Accordingly, the named Plaintiff is a citizen of a state different from Defendant, and

5  diversity exists for purposes of CAFA jurisdiction. *See* 28 U.S.C. §§ 1332(d)(2)(A), 1453.

6        **E.**      **The Amount in Controversy Exceeds $5,000,000.**

7        26.      Under the removal statute, "[i]n any class action, the claims of the individual class

8  members shall be aggregated to determine whether the matter in controversy exceeds the sum or

9  value of $5,000,000, exclusive of interest and costs." 28 U.S.C. § 1332(d)(6).

10        27.      In *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014), the

11  Supreme Court recognized that, "as specified in § 1446(a), a defendant's notice of removal need

12  include only a plausible allegation that the amount in controversy exceeds the jurisdictional

13  threshold." Only if the plaintiff contests or the court questions the allegations of the notice of

14  removal is supporting evidence required. *Id.* at 89. "[T]he defendant's amount-in-controversy

15  allegation should be accepted" just as a plaintiff's amount-in-controversy allegation is accepted

16  when a plaintiff invokes federal court diversity jurisdiction. *Id.* at 87.

17        28.      For purposes of determining whether the amount in controversy has been satisfied,

18  the Court must presume that Plaintiff will prevail on his claims. *See Kenneth Rothschild Trust v.*

19  *Morgan Stanley Dean Witter*, 199 F.Supp.2d 993, 1001 (C.D. Cal. 2002) (citing *Burns v. Windsor*

20  *Ins. Co.*, 31 F. 3d 1092, 1096 (11th Cir. 1994) (stating that the amount in controversy analysis

21  presumes that "plaintiff prevails on liability.")). The ultimate inquiry is what amount is put "in

22  controversy" by the allegations of a plaintiff's complaint, not what a defendant might actually owe.

23  *Lewis v. Verizon Communs., Inc.*, 627 F.3d 395, 400 (9th Cir. 2010) ("The amount in controversy

24  is simply an estimate of the total amount in dispute, not a prospective assessment of [a] defendant's

25  liability."); *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1198 n.1 (9th Cir. 2015) (explaining that

26  even when the court is persuaded the amount in controversy exceeds $5,000,000, defendants "are

27  still free to challenge the actual amount of damages in subsequent proceedings and at trial" because

28

7
DEFENDANT TARGET CORPORATION'S NOTICE OF REMOVAL

WEST\300875838.1

1  they are only estimating the amount in controversy).

2      29.    Defendant denies the validity and merit of the entirety of Plaintiff's claims and the claims for monetary and other relief that flow therefrom. For purposes of removal only, however, and without conceding that Plaintiff or the putative class are entitled to any damages or penalties whatsoever, it is readily apparent that the allegations of Plaintiff's Complaint establish that the amount in controversy exceeds CAFA's jurisdictional minimum of $5,000,000.

    30.    Plaintiff alleges that he and the members of the "CALIFORNIA LABOR SUB-CLASS" he seeks to represent are entitled to damages beginning three years prior to the filing of his Complaint and continuing to a date "as determined by the Court." (Complaint, ¶ 37.) Defendant alleges, on information and belief, that between September 30, 2019, and November 30, 2022, Defendant employed at least 6,000 individuals in non-exempt positions at Defendant's distribution centers in California. Thus, there are at least 6,000 individuals who fall within the scope of the defined "CALIFORNIA LABOR SUB-CLASS" that Plaintiff seeks to represent and are alleged to be the putative sub-class members in this action.

    31.    The Complaint asserts the following eight causes of action on behalf of the "CALIFORNIA LABOR SUB-CLASS": (a) failure to pay minimum wages in violation of California Labor Code §§ 1194, 1197, and 1197.1; (b) failure to pay overtime wages in violation of California Labor Code § 510; (c) failure to provide meal periods in violation of California Labor Code §§ 226.7 and 512 and the applicable IWC Wage Order; (d) failure to authorize and permit rest periods in violation of California Labor Code § 226.7 and the applicable IWC Wage Order; (e) failure to provide accurate itemized wage statements in violation of California Labor Code § 226; (f) failure to reimburse business expenses in violation of California Labor Code § 2802; (g) failure to timely pay wages owed upon separation from employment in violation of California Labor Code §§ 201-203; and (h) failure to pay sick pay wages in violation of California Labor Code §§ 201-204, 233, and 246. (Complaint, ¶¶ 61-119.)

    32.    Based on the allegations in the Complaint, the amount that Plaintiff has placed in controversy is at least **$9,006,000**, as summarized and explained below.

33. **Failure to Pay Minimum Wages.** In his Second Cause of Action, Plaintiff alleges that "DEFENDANT maintained a wage practice of paying PLAINTIFF and the other members of the CALIFORNIA LABOR SUB-CLASS without regard to the correct amount of time they work" and that "DEFENDANT's policy and practice was to unlawfully and intentionally deny timely payment of wages due to PLAINTIFF and the other members of the CALIFORNIA LABOR SUB-CLASS." (*Id.*, ¶ 66.) Plaintiff also alleges that Defendant required him and other putative class members to: work while clocked out during meal periods; perform off-the-clock work "undergoing mandatory drug testing or any other testing and/or examination required as a condition of employment" and "mandatory temperature checks and symptom questionnaires for COVID-19 screening . . . ." (*Id.*, ¶ 8.) Plaintiff also alleges that Defendant "administers a uniform practice of rounding the actual time worked" and that the practice benefited Defendant. (*Id.*)

34. California law requires that employers compensate employees for all "hours worked," which means "the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so." CAL. CODE REGS. tit. 8, §§ 11070(2)(G), 4(B).

35. Assuming that Plaintiff and each of the members of the "CALIFORNIA LABOR SUB-CLASS" were not paid for one hour of compensation during the entire three-year liability period – a conservative estimate given Plaintiff's allegations – and that members of the "CALIFORNIA LABOR SUB-CLASS" were entitled to an additional hour of pay at the applicable minimum wage, the amount in controversy as to Plaintiff's claim for unpaid wages would be at least **$72,000** (one hour of pay x $12.00 per hour[1] x 6,000 putative sub-class members).

36. **Failure to Provide Meal Periods.** In his Fourth Cause of Action, Plaintiff alleges that "DEFENDANT from time to time failed to provide all the legally required off-duty meal breaks to PLAINTIFF and the other CALIFORNIA LABOR SUB-CLASS Members as required by the

---

[1] The California minimum wage in effect on September 30, 2019 (*i.e.*, three years before this lawsuit was filed) for employers with more than 25 employees was $12.00/hour. On information and belief, Defendant paid many of the putative sub-class members more than minimum wage throughout the applicable three-year period. Moreover, the state minimum wage has increased incrementally since 2019, making this calculation a conservative underestimate of the unpaid wages in controversy.

applicable Wage Order and Labor Code. The nature of the work performed by PLAINTIFF and CALIFORNIA LABOR SUB-CLASS MEMBERS did not prevent these employees from being relieved of all of their duties for the legally required off-duty meal periods. As a result of their rigorous work schedules, PLAINTIFF and other CALIFORNIA LABOR SUB-CLASS Members were from time to time not fully relieved of duty by DEFENDANT for their meal periods. Additionally, DEFENDANT's failure to provide PLAINTIFF and the CALIFORNIA LABOR SUB-CLASS Members with legally required meal breaks prior to their fifth (5th) hour of work is evidenced by DEFENDANT's business records from time to time. Further, DEFENDANT failed to provide PLAINTIFF and CALIFORNIA CLASS Members with a second off-duty meal period in some workdays in which these employees were required by DEFENDANT to work ten (10) hours of work from time to time." (Complaint, ¶ 91.)

37.  Under the California Labor Code, if an employer fails to provide an employee a meal period in accordance with California law, "the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal . . . period is not provided." CAL. LAB. CODE § 226.7(c).

38.  Assuming that Plaintiff and each of the putative sub-class members were not provided just one meal period without compensation during the three-year liability period – a conservative estimate given Plaintiff's allegations that Defendant failed to provide putative sub-class members with compliant meal periods "from time to time" (Complaint, ¶ 91) – and that putative sub-class members were entitled to an additional hour of pay for those meal periods at the applicable minimum wage, the amount in controversy as to Plaintiff's meal period claim would be at least **$72,000** (one meal period premium x $12.00 per hour[2] x 6,000 putative sub-class members).

39.  **Failure to Authorize and Permit Rest Periods.** In his Fifth Cause of Action, Plaintiff alleges that "PLAINTIFF and other CALIFORNIA LABOR SUB-CLASS Members were from time to time required to work in excess of four (4) hours without being provided ten (10)

---

[2] This is a conservative underestimate of the meal period premiums in controversy. *See supra* note 1.

minute rest periods. Further, these employees from time to time were denied their first rest periods of at least ten (10) minutes for some shifts worked of at least two (2) to four (4) hours, a first and second rest period of at least ten (10) minutes for some shifts worked of between six (6) and eight (8) hours, and a first, second and third rest period of at least ten (10) minutes for some shifts worked of ten (10) hours or more from time to time." (Complaint, ¶ 95.) Plaintiff also alleges that, "[a]s a result of their rigorous work schedules, PLAINTIFF and other CALIFORNIA LABOR SUB-CLASS Members were periodically denied their proper rest periods by DEFENDANT and DEFENDANT's managers." (*Id.*)

40. Under the California Labor Code, if an employer fails to provide an employee a rest period in accordance with California law, "the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the . . . rest . . . period is not provided." CAL. LAB. CODE § 226.7(c).

41. Assuming that Plaintiff and each of the putative sub-class members were not provided just one rest period without compensation during the entire three-year liability period – a conservative estimate given Plaintiff's allegation that Defendant failed to provide putative sub-class members with compliant rest periods "from time to time" and "periodically" (Complaint, ¶ 95) – and that putative sub-class members were entitled to an additional hour of pay for those rest periods at the applicable minimum wage, the amount in controversy as to Plaintiff's rest period claim would be at least **$72,000** (one rest period premium x $12.00 per hour[3] x 6,000 putative sub-class members).

42. **<u>Wage Statement Penalties.</u>** In his Sixth Cause of Action, Plaintiff seeks statutory wage statement penalties pursuant to California Labor Code § 226 based on the allegation that, "[f]rom time to time, DEFENDANT also failed to provide PLAINTIFF and the other members of the CALIFORNIA LABOR-SUB-CLASS with complete and accurate wage statements which failed to show, among other things, the correct gross and net wages earned." (Complaint, ¶ 100.) Plaintiff

---

[3] This is a conservative underestimate of the rest period premiums in controversy. *See supra* note 1.

also alleges that Defendant issued wage statements that "failed to identify the accurate total hours worked each pay period." (*Id.*)

43. California Labor Code § 226(e) provides that when an employee suffers injury as a result of the employer's "knowing and intentional" failure to issue accurate wage statements, the employee may recover the greater of actual damages, or $50 for the initial pay period in which the violation occurs and $100 for each violation in a subsequent pay period, up to a maximum penalty of $4,000 per employee. The statute of limitations for Plaintiff's wage statement claim is one year. *See* CAL. CIV. PROC. CODE § 340(a); *Hassan v. Praxair, Inc.*, 2019 WL 3064435, at *5 (C.D. Cal. March 4, 2019) ("To the extent that Plaintiff's wage statement claim seeks to recover penalties, it is restricted by a one-year limitations period." (citing *Novoa v. Charter Commc'ns, LLC*, 100 F.Supp.3d 1013, 1025 (E.D. Cal. 2015))).

44. Defendant alleges, on information and belief, that it has employed at least 3,000 individuals in non-exempt positions at Defendant's distribution centers in California since September 30, 2021. Assuming that Defendant failed to issue each of these putative sub-class members a single non-compliant wage statement during the one-year liability period – a conservative estimate given Plaintiff's allegations that Defendant issued non-compliant wage statements to putative sub-class members "from time to time" (Complaint, ¶ 100) – the amount in controversy as to Plaintiff's wage statement claim is at least **$150,000** ($50 initial wage statement penalty x 3,000 putative sub-class members).

45. **Waiting Time Penalties.** In his Eighth Cause of Action, Plaintiff seeks waiting time penalties pursuant to California Labor Code § 203 for sub-class members whose employment has ended. (Complaint, ¶¶ 106-113.) The statute of limitations for Plaintiff's waiting time penalty claim is three years. *See Pineda v. Bank of Am., N.A.*, 50 Cal. 4th 1382, 1935 (2010) ("[No] one disputes that when an employee sues to recover both unpaid final wages and the resulting section 203 penalties, the suit is governed by the same three-year limitations period that would apply had the employee sued to recover only the unpaid wages."). Penalties under California Labor Code § 203(a) are calculated at an employee's final daily rate of pay (*i.e.*, the employee's final wage rate multiplied

by the employee's average shift length) multiplied by the number of days of waiting time penalties (up to 30 days). *Mamika v. Barca*, 68 Cal. App. 4th 487, 491-93 (1998).

46. Defendant alleges, on information and belief, that Defendant employed at least 3,000 individuals in non-exempt positions at Defendant's distribution centers in California whose employment with Defendant ended on or after September 30, 2019, that these employees worked at least 8-hour shifts, and that their hourly rate of pay has at all times been at least the California state minimum wage. Accordingly, a conservative estimate of the minimum amount in controversy with respect to Plaintiff's waiting time penalty claim is at least **$8,640,000** (3,000 former putative class members x $12.00/hour[4] x 8 hours x 30 days). This figure, without more, satisfies CAFA's jurisdictional minimum.

47. **Additional Claims for Damages.** The amount placed in controversy by Plaintiff's causes of action for alleged unpaid minimum wages, meal period premiums, rest period premiums, wage statement penalties, and waiting time penalties is at least **$9,006,000**. Each of Defendant's amount-in-controversy calculations discussed above are conservative and the actual amount in controversy is likely higher. In addition, Plaintiff seeks to recover restitution for alleged unlawful business practices for an additional year (First Cause of Action), alleged unpaid overtime wages (Third Cause of Action), alleged unreimbursed business expenses (Seventh Cause of Action), alleged failure to pay sick pay wages at the regular rate of pay, and attorneys' fees which Defendant did not factor into its amount-in-controversy calculations. Obviously, inclusion of alleged restitution during the first year of the four-year limitations period, unpaid overtime wages, unreimbursed business expenses, unpaid sick pay wages, and attorneys' fees would increase the amount in controversy. Therefore, CAFA's jurisdictional requirement that the matter in controversy exceed $5,000,000, exclusive of interest and costs, is easily satisfied in this action.

---

[4] The California minimum wage in effect on September 30, 2019 (*i.e.*, three years before this lawsuit was filed) for employers with more than 25 employees was $12.00/hour. On information and belief, Target paid many of the putative sub-class members more than minimum wage throughout the applicable three-year period. Moreover, the state minimum wage has increased incrementally since that time, making this calculation a conservative underestimate of the waiting time penalties in controversy.

## VI. NOTICE OF REMOVAL TO STATE COURT AND ADVERSE PARTY

48. Following the filing of this Notice of Removal in the United States District Court for the Eastern District of California, written notice of such filing will be given by the undersigned to Plaintiff's counsel of record, Norman B. Blumenthal, Kyle R. Nordrehaug, Aparajit Bhowmik, and Nicholas J. De Blouw of Blumenthal Nordrehaug Bhowmik De Blouw LLP, and a copy of the Notice of Removal will be filed with the Clerk of the Kern County Superior Court in accordance with 28 U.S.C. § 1446(d).

WHEREFORE, Defendant hereby removes this action from the Superior Court of the State of California, County of Kern, to the United States District Court for the Eastern District of California, pursuant to CAFA.

Dated:  November 30, 2022                **DLA PIPER LLP (US)**

By:  */s/ Matthew Riley*
JULIE A. DUNNE
MATTHEW RILEY
ALBERTO CORONA

Attorneys for Defendant
TARGET CORPORATION

**INDEX OF EXHIBITS TO DEFENDANT TARGET CORPORATION'S NOTICE OF REMOVAL TO FEDERAL COURT PURSUANT TO 28 U.S.C. §§ 1332, 1441, AND 1446**

| Exhibit | Description | Page(s) |
|---|---|---|
| A | Notice of Assignment to Judge for All Purposes and Notice of Order to Show Cause Re CRC Rule 3.110 and Notice of Case Management Conference | 16-19 |
| B | Complaint | 20-66 |
| C | Summons, Civil Case Cover Sheet, Alternative Dispute Resolution (ADR) Information Packet, and Notice and Acknowledgment of Receipt—Civil and pre-paid return envelope | 67-76 |
| D | Executed Acknowledgment of Receipt | 77-78 |
| E | Answer | 79-91 |
| F | Notice of Related Cases | 92-103 |